HELEN M. FROHBERG *vs.* MERRIMACK MUTUAL FIRE
INSURANCE COMPANY.

No. 92-P-792.

Norfolk. April 7, 1993. - May 7, 1993.

Present: BROWN. KASS. & LAURENCE. JJ

*Insurance*, Homeowner's insurance, Insurer's obligation to defend, Con-
struction of policy, Coverage. *Contract*, Insurance.

An insurer had no duty to defend or indemnify an insured under a stan-
dard homeowner's insurance policy which had been cancelled by the
insured as of the date of the sale of her house, where the personal inju-
ries alleged by the buyers of the house, arising from the existence of
urea formaldehyde foam insulation (UFFI), could not have resulted in
a manifestation of any bodily injury until after their exposure to the
UFFI in the house, which was subsequent to the termination of the
policy; and where the buyers' asserted property damage was not actu-
ally sustained until after they discovered the UFFI, lost their enjoyment
or use of the premises, had to relocate, and had to expend money to
remove the UFFI — long after the policy period had ended. [464-465]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 21, 1990.

The case was heard by *Andrew G. Meyer*, J., on motions
for summary judgment.

*James A. Goodhue* for the plaintiff.

*Regina E. Roman* for the defendant.

LAURENCE, J. On June 2, 1988, the plaintiff, Helen
Frohberg, sold her residence in Dover to Joan and Barry
Roth for $600,000. Up to the time of the sale, Frohberg
maintained a standard homeowner's insurance policy with re-
spect to the premises through the defendant, Merrimack Mu-
tual Fire Insurance Company, covering the period April 6,
1988, to April 6, 1989. Frohberg cancelled the policy as of
the date of the closing. In July, 1990, the Roths, having dis-
covered in January, 1990, that the house contained urea for-

maldehyde foam insulation (UFFI), sued Frohberg and others connected with the 1988 sale, alleging fraudulent and negligent misrepresentation, breach of contract, negligence, and violations of G. L. c. 93A and c. 255, § 12I.[1] The Roths sought damages for, among other things, respiratory injury to their daughter attributed to the presence of the UFFI and the removal of the UFFI from their home, estimated to cost $127,000.

In November, 1990, Merrimack received notice of Frohberg's request for a defense and, if necessary, indemnification from Merrimack in connection with the Roths' litigation. In December, 1990, Merrimack informed Frohberg that it would not defend or indemnify her because (it asserted) the former policy did not provide coverage for the events at issue in the Roths' suit. Frohberg responded by filing the instant action in December, 1990, seeking a declaratory judgment that Merrimack was obligated to assume her defense and indemnify her for any judgment entered against her in the Roths' lawsuit, up to the former policy's limits. Frohberg's complaint also included claims for violations of G. L. c. 93A and c. 176D and for intentional infliction of emotional distress.

In November, 1991, Frohberg moved for summary judgment on her declaratory judgment count. Merrimack crossmoved for summary judgment on all three counts of her complaint. In March, 1992, a Superior Court judge denied Frohberg's motion and allowed Merrimack's. The judge read the policy coverage as inapplicable to the allegations in the Roths' complaint. See *Aetna Cas. & Sur. Co. v. Cotter*, 26

---

[1]Merrimack correctly observes that the gravamen of the Roths' complaint was misrepresentation, particularly in light of the allegation that Frohberg's attorney had provided at the closing a "certificate and indemnification agreement," acknowledged to be true by Frohberg, stating that "UFFI was never installed" in the residence being sold. While we acknowledge the validity of the general proposition Merrimack quotes from *Aetna Cas. & Sur. Co. v. Cotter*, 26 Mass. App. Ct. 56, 59 (1988), that "generally a misrepresentation is an incorporeal tort, like defamation, which does not cause bodily injury or property damage" within the meaning of a liability policy, we do not rely on that principle for the result we reach.

Mass. App. Ct. 56, 58 (1988). The policy protected an insured against claims or suits for damages because of "bodily injury or property damage" caused by "an occurrence," which was defined as "an accident . . . which results, *during the policy period,* in (a) bodily injury; or (b) property damage" (emphasis added). The liability coverage section of the policy also contained a condition that limited the policy's applicability to "bodily injury or property damage . . . *which occurs during the policy period*" (emphasis added). Given the fact that none of the Roths' damages was alleged to have occurred prior to Frohberg's termination of her homeowner's policy, we affirm the judge's decision in light of these unambiguous policy provisions.

It is established that an insurer has only an "obligation to indemnify the insured against judgments obtained against it within the policy coverage" and no duty to defend if the underlying complaint does not demonstrate the "possibility that the liability claim falls within the insurance coverage." *Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316, 318 n.4, 319 (1983). Merrimack has principally argued that under this policy it had no duty to defend or indemnify Frohberg because no asserted injuries for which Frohberg might be liable in the Roths' suit were sustained during the policy period. That contention is supported by the record as well as by the governing law. See *Continental Cas. Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 152 (1984) ("The time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged"); *Lumbermens Mut. Cas. Co.* v. *Belleville Indus., Inc.,* 407 Mass. 675, 686-687 n.9 (1990). See also *Eagle-Picher Indus., Inc.* v. *Liberty Mut. Ins. Co.,* 682 F.2d 12, 17, 23-25 (1st Cir. 1982) (in construing an almost identical policy and interpreting Massachusetts law in an asbestos exposure situation, the First Circuit held that "[i]t is clear from this language that each occurrence is made up of two components, the exposure and the resulting bodily injury; and it is

the resulting bodily injury, not the exposure, which must take place 'during the policy period' ").

The personal injuries alleged by the Roths' complaint could not have resulted in a manifestation of any bodily injury until after their exposure to the UFFI in the house, which was subsequent to the termination of the Merrimack policy. Similarly, the Roths' asserted property damage was not actually sustained until after they discovered the UFFI in 1990, lost their enjoyment or use of the premises, had to relocate, and had to expend money to remove the UFFI — long after the policy period.

Since counts 2 and 3 of Frohberg's complaint (alleging, respectively, violations of G. L. c. 93A and c. 176D, and intentional infliction of emotional distress) were based upon Merrimack's failure to provide Frohberg with a defense or an indemnity with respect to the Roths' suit, the judge's dismissal of those wholly derivative counts, along with the legally unsupportable count for a declaration of coverage, was correct. See *LoCicero* v. *Hartford Ins. Group*, 25 Mass. App. Ct. 339, 340, 345 (1988).[2]

*Judgment affirmed.*

---

[2]Any equitable concern for Frohberg's situation is diluted by the fact that she received $600,000, presumably representing the worth of a house without UFFI, when she appears to have sold (despite her written assurance to the contrary) a devalued house containing UFFI. The language of the policy would be inequitably expanded if it were construed to allow her to pass on to her former insurer the effective obligation to compensate the unsuspecting buyers for the cost of removal of the UFFI while permitting her to keep the full purchase price. We also note that, even if Merrimack had provided insurance coverage to Frohberg at the time the UFFI was installed, she herself would not have been covered under the homeowner's policy for losses or damages resulting from the UFFI installation, because of express policy exclusions for damage to property owned by the insured and for losses resulting from construction, renovation, or repairs involving defective materials such as UFFI.