Harry JOHNSON, et al., Plaintiffs,

v.

Robert J. STUDYVIN, Defendant,

Great American Insurance Company, et al., Garnishees.

GREAT AMERICAN INSURANCE COMPANY, et al., Plaintiffs,

v.

Robert J. STUDYVIN d/b/a Studyvin Drywall, et al., Defendants.

Nos. 92–2292–JWL, 92–2430–JWL.

United States District Court, D. Kansas.

July 28, 1993.

Daniel G. Menzie, Turner & Boisseau, Chartered, Wichita, KS, and Victor A. Bergman, John M. Parisi, Shamberg, Johnson, Bergman & Morris, Chtd., Overland Park, KS, for Harry Johnson and Deborah A.

Sapp–Johnson, as individuals and co-conservator for their minor daughters Annie K. Johnson, Erin C. Johnson and Bridget B. Johnson.

Curtis L. Tideman, Lathrop & Norquist, Overland Park, KS, and Kyle B. Mansfield, Stephen J. Foley, and Thomas M. Stieber, Foley & Mansfield, Minneapolis, MN, for Great American Ins. Co. and American Nat. Fire Ins. Co.

Patrick E. McGrath, Wallace, Saunders, Austin, Brown & Enochs; and William T. Fitzgerald, Niewald, Waldeck & Brown, Overland Park, KS, for Farmers Alliance Mut. Ins. Co., Suburban Shake & Shingle, Co., Ken Stahlhut, Michael (NMI) Sayler and Michael (NMI) Paden.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This matter comes before the court in this combined action on the motion of Great American Insurance Company and American National Fire Insurance Company (collectively "Great American") for summary judgment (Doc. # 34), the motion of plaintiffs Harry Johnson, Deborah A. Sapp–Johnson, as individuals, and as co-conservators for minors Annie K. Johnson, Erin C. Johnson and Bridget B. Johnson ("the Johnsons") for summary judgment (Doc. # 45), and the Johnsons' motion to strike Great American's expert witness (Doc. # 44). For the reasons set forth below, the summary judgment motion of Great American is granted in part and denied in part, the Johnsons' motion for summary judgment is denied and the Johnsons' motion to strike Great American's expert witness is granted.

### II. Facts

The following facts are uncontroverted for purposes of the motions for summary judgment. In August and September of 1977, Robert Studyvin d/b/a Studyvin Drywall was a drywall contractor who selected and installed certain spray-on ceiling texture containing asbestos in the home at 17670 West 183rd Street, Olathe, Kansas. At the time that this work was done, the home was owned by a Mr. Armbruster who later, on or about July 17, 1985, sold the home to the Johnsons. In 1990, after observing water damage in the ceilings of their home, the Johnsons retained a contractor to do various work to the roof and ceilings, including scraping off the ceiling texture. Neither the Johnsons nor the contractor were initially aware that the dust which resulted from the ceiling scrapings contained asbestos. On or about July 10, 1990, the Kansas Department of Health and Environment confirmed that the dust contained asbestos.

Mr. Studyvin had a special liability policy ("SLP"), Policy No. SLP 9–44–61–63, from Great American which was effective from December 5, 1976 to December 5, 1977. Great American also issued SLP policies to Mr. Studyvin annually from December 5, 1977 through December 5, 1982. All SLP policies issued to Mr. Studyvin during this period used the same insuring agreement, Great American Form No. 21000C.

These SLP policies had the following language.

[Great American] agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to limits of liability, exclusions, conditions and other terms of this policy:

Bodily Injury Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence.

Property Damage Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence.

"Bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which result during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured. For the purpose of

determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

"Property Damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at anytime resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Conditions: "Policy period. This policy applies to occurrences taking place anywhere during the policy period; ..."

Great American also issued Mr. Studyvin a "Business Protector Policy" ("BPP"), with a policy period of July 10, 1981 through July 10, 1984. This policy, No. BP 2690417, was cancelled by Great American effective April 10, 1984. The definitions of "personal injury" and "property damage" of the BPP are identical to those of the SLP. The BPP contains the following unique language.

The Company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance, or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, ...

"Occurrence." [A]n accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured.

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

The BPP also contains Completed Operations Hazard and Products Hazard exclusions.

Completed Operations Hazard includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, that only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" includes materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) When all operations to be performed by or on behalf of the named insured under the contract have been completed.
(2) When all operations to be performed by or on behalf of the named insured at the site of the operations have been completed;
(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency but which are otherwise complete, shall be deemed completed.

Products Hazard includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

In November, 1990, the Johnsons commenced a lawsuit against various parties including their homeowners insurer and the contractor who did the ceiling and roofing work during 1990. On or about April 14, 1991, Mr. Studyvin notified his insurance agent that certain claims were going to be made against him in connection with the work he had performed on this residence.

Great American informed Mr. Studyvin that they could not confirm that he had any policies during the relevant periods and thus did not provide him with an attorney to defend himself from the Johnson's claim. The Johnsons obtained a default judgment, dated February 10, 1992, against Mr. Studyvin in the amount of $1,309,200.00. The default judgment listed the Johnson's Property Damage as $184,200.00 and their Personal Injury as $750,000. The remainder of the judgment represented noneconomic damages of $375,-000. Following the entry of this default judgment, Great American discovered that it had issued policies to Mr. Studyvin during the relevant periods of time although they then denied that those policies covered Mr. Studyvin's liability for the default judgment.

### III. Standard for Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### IV. Insurance Coverage

Great American National seeks summary judgment on the issue of whether or not its SLP and BPP policies provided coverage for Mr. Studyvin's liability for applying asbestos-containing materials to the ceilings in the residence now owned by the Johnsons. For the reasons set forth below, the court grants Great American's motion for summary judgment in part because there was no coverage for Mr. Studyvin's liability for Personal Injury (as defined in the policies) and Property Damage, other than the Johnsons' loss of use

of their home, under the SLP policy and no coverage under the BPP policy for any of Mr. Studyvin's liability associated with this matter. The court denies the insurers' motion in part, finding that the court cannot, as a matter of law, find that the SLP policies did not provide coverage for Mr. Studyvin's liability for the Johnsons' loss of use of their home which resulted from Mr. Studyvin's application of asbestos-containing materials to the residence.

### A. Bodily Injury Coverage under the SLP and BPP Policies

 In an insurance coverage dispute, the burden is on the insured to prove that the loss is of the type included in the general provisions of coverage. *Clark Equip. Co. v. Hartford Accident & Indemnity Co.,* 227 Kan. 489, 491, 608 P.2d 903 (1980). The Johnsons have failed to meet their burden of proving that the loss is of the type included within the coverage of the SLP or BPP policies.

Both policies define Bodily Injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." Because the Johnsons' bodily injury occurred after all of the Great American policies had expired or been cancelled, there can be no coverage under the SLP or BPP policies for Bodily Injury.

There have been a number of legal theories which attempt to set forth, for purposes of insurance contract interpretation, when a bodily injury occurs in connection with a person's exposure to a hazardous substance such as asbestos. These include the theories that individuals are injured (1) when they are first exposed to the hazardous substance, *see Clemtex, Inc. v. Southeastern Fidelity Ins. Co.,* 807 F.2d 1271 (5th Cir.1987), (2) when they manifest symptoms of their injury or disease resulting from exposure to the hazardous substance, *see Eagle–Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 682 F.2d 12 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983), (3) when actual injury occurs, *see Insurance Co. of N. Am. v. Forty–Eight Insulations,* 633 F.2d 1212 (6th Cir.1980), *clarified,* 657 F.2d 814

(6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), (4) or at any time when one of these three events occurs. *See Lac D'Amiante du Quebec, Ltee v. American Home Assur. Co.,* 864 F.2d 1033 (3rd Cir.1988). Which theory is used is often determinative of whether insurance coverage is triggered. Kansas law is not clear concerning the theory to which it adheres but the Supreme Court of Kansas may have adopted the actual injury theory. *See Scott v. Keever,* 212 Kan. 719, 724, 512 P.2d 346, 349 (1974).

Fortunately, the facts of this case are such that determining Kansas' selection among the competing theories is not necessary. Under any of the theories, there can not be any bodily injury until a person is exposed to the hazardous substance. The earliest that the Johnsons could have been exposed to the asbestos in their home was when they acquired it in July, 1985. Furthermore, the default judgment in the underlying state court action establishes that all of the Johnsons' personal injury occurred as a result of exposure which they sustained between June 25, 1990 and July 5, 1990, the period when the ceilings in their home were being scraped by contractors.

None of Great American's policies issued to Mr. Studyvin were in effect from July, 1985 on, and therefore the policies did not cover the Johnsons' bodily injury which resulted from exposure to asbestos. Therefore the court grants the insurers' motion for summary judgment to the extent that it is based on the lack of coverage under either policy for bodily injury.

### B. Coverage for Property Damage

■ The situation is somewhat different concerning coverage for property damage. Under both the SLP and BPP policies, the insurer must "pay on behalf of the insured all sums which the insured shall become obligated to pay as damages because of property damage caused by an occurrence." Property damage is, in pertinent part, defined by the policies as "physical injury to or destruction of tangible property which occurs during the policy period including the *loss of use thereof at anytime resulting therefrom.*"

Great American argues that Mr. Studyvin is not covered for the Johnson's property damage because they acquired the residence after the policy period expired and therefore could not have sustained property damage during the policy period. Although the court agrees that most of the Johnsons' claims against Mr. Studyvin for property damage are not covered, the court does not agree with respect to the Johnsons' claim for the loss of use of their home.

Great American directs this court's attention to two cases from Massachusetts which hold that a general liability policy does not cover claims against an insured for property damage by claimants who did not own the property during any policy period. *See Hoppy's Oil Service, Inc. v. Insurance Co. of N. Am.,* 783 F.Supp. 1505, 1508 (D.Mass.1992); *Frohberg v. Merimack Mut. Fire Ins. Co.,* 34 Mass.App. 462, 612 N.E.2d 273 (1993). Judge Keeton, in *Hoppy's Oil,* reasoned that "an entity making a tort claim against the insured must sustain harm within the period of the policy in order to assert a claim to which insurance applies." *Hoppy's Oil,* 783 F.Supp. at 1508. The property damage claims against the insured in *Hoppy's Oil* were not covered because (1) "at the time of the occurrence alleged in the [claimant's] complaint, the trust did not have a property interest in the injured property", and (2) when the claimant acquired an interest in the property, it "acquired an interest in property that had already been injured." The Johnsons did not have an interest in the property at any time when a Great American policy was in effect and therefore this reasoning also applies here to preclude coverage of Mr. Studyvin's liability for all of the Johnsons' property damage claims except for the loss of use of their home, which is discussed below.

The decisions in the Massachusetts cases were based on different language in the policy, which simply defined "property damage" as "physical injury to or destruction of tangible property which occurs during the policy period." If such were the definition of "property damage" at issue here, Judge Keeton's well-reasoned holding in *Hoppy's Oil Service* would also apply here to deny coverage for Mr. Studyvin's liability for the John-

son's loss of use of their home. However, the definition of "property damage" in the policies at issue also contains the phrase "including the loss of use thereof at anytime resulting therefrom." This additional language was not discussed in either of the Massachusetts cases and is determinative here.

The Kansas cases have not addressed the issue of when a physical injury occurs for purposes of determining coverage for property damage under the definition of property damage at issue here. The closest case this court can find is *Scott v. Keever*, 212 Kan. 719, 512 P.2d 346, 349 (1974), in which the Kansas Supreme Court analyzed an older version of a standard comprehensive general liability ("CGL") policy to determine that, for purposes of determining coverage for bodily injury, an accident which occurred after the policy period was not covered by the policy even if the defective product which caused the accident was sold during the policy period. In that case, the Kansas Supreme Court did not consider whether there was any coverage for property damage. Even if it had considered that issue, it would not be helpful here because the language of the policies at issue in *Scott* were like those in *Hoppy's Oil* which did not contain any language related to property damage which results from the "loss of use at anytime."

Under the circumstances present in this case, the definition of "property damage" is ambiguous. Thus it must be construed in favor of coverage of the insured. *See Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991). Under both the SLP and the BPP policies, the insured is covered for occurrences which take place during the policy period and which result in property damage during the policy period.

A necessary condition for property damage to occur during the required time frame is that there must be "physical injury to or destruction of tangible property" during the

policy period. This condition of physical injury was met when the asbestos was applied to the ceilings of the residence. In *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 814 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993), the Seventh Circuit held that pursuant to the very policy language concerning property damage which is at issue here, "the drafting history of the property damage clause, and the probable understanding of the parties to liability insurance contracts, persuade us that incorporation of a defective product into another product inflicts physical injury in the relevant sense on the latter at the moment of incorporation."[1] In other words, at the moment when a defective product, such as a ceiling texture which is hazardous because it contains asbestos, is attached to some property in a manner that makes it not easily removed, that property is physically injured.

There are two ambiguities in the definition of "property damage." The first is whether, once there have been an occurrence and a physical injury to property during the policy period, the insurer is liable for coverage for the loss of use of the property after the policy period has expired which results from a physical injury which occurred during the policy period. The policy may be read to require that the loss of use of the property must occur during the policy period or it may be read to allow the loss of use to occur "at anytime." The second ambiguity is whether the property must have had the same owners when the physical injury and the loss of use occurred in order to provide coverage for liability for "property damage."

To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rule of interpretation to the face of the instrument leaves it generally uncer-

---

1. The First Circuit in *In re San Juan DuPont Plaza Hotel Fire Litigation*, 989 F.2d 36, 38–39 (1st Cir.1993) declined to follow *Eljer* because (1) *Eljer* involved the incorporation of an inherently defective system which *DuPont Plaza* did not and (2) *Eljer* involved "property damage" to homes in

which the defective systems were installed while in *DuPont Plaza* "the insureds' expenditures were made to recompense personal injury and wrongful death claims rather than property damage claims." Neither of these distinguishing features are present in this case.

tain which one of two or more meanings is the proper meaning. *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear." *Id.*

Therefore, this court construes the SLP and BPP insurance contracts to provide coverage for an insured when there is an occurrence and property damage during the policy period and there is a loss of use of the property after the policy period expires which results from the physical injury, whether or not the property was owned by the same persons when it was physically injured and when its use was lost. Both policies covered Mr. Studyvin for his liability which arises from the Johnsons' loss of the use of their home which resulted from Mr. Studyvin's application of asbestos-containing ceiling texture to the home which they eventually purchased.[2] This coverage does not extend to all of Mr. Studyvin's liability for property damage, but only to the Johnsons' loss of use of their property.

 The BPP policy has additional exclusions not contained in the SLP policy which exclude Mr. Studyvin's coverage for property damage. The burden of proving the application of exclusionary clauses of an insurance policy falls upon the insurance company. *Central Sec. Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15, 18 (1984). The insurers have carried that burden regarding exclusions which apply to Mr. Studyvin's liability to the Johnsons for property damage.

The BPP policy has exclusions for Completed Operations Hazard and Products Hazard. These exclusions act to exclude risks that "the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work

itself . . . for which the insured may be found liable." *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98, 102–03 (2d Cir.1993).

Only acts which are "sufficiently removed from the quality of the product in question" would escape the products hazard exclusionary provision. *Cravens, Dargan & Co. v. Pacific Indem. Co.*, 29 Cal.App.3d 594, 601, 105 Cal.Rptr. 607 (1972). Here, the hazardous nature of the asbestos which Mr. Studyvin applied to the ceiling is the quality of the ceiling texture which has caused the Johnsons' property damage and personal injuries. Therefore, the products hazard exclusionary clause acts to exclude Mr. Studyvin's liability under the BPP policies.

Because the operation of applying the ceiling texture was completed and the product, i.e. asbestos-containing ceiling texture, left Mr. Studyvin's possession long before any BPP insurance was issued to Mr. Studyvin, the exclusions discussed above must exclude from coverage under the BPP policies Mr. Studyvin's liability for property damage, including the Johnson's loss of use of their home.

These exclusions are not present in the SLP policies and therefore do not limit the insurers' liability with regard to Mr. Studyvin's liability for the Johnson's property damage. Therefore, the court denies Great American's motion for summary judgment in part and finds that it cannot rule as a matter of law that Mr. Studyvin was not covered under his SLP policy for the Johnsons' loss of use of their home which resulted from his application of asbestos-containing materials to the residence in 1977.

## V. Great American's Duty to Defend

 The Johnsons move the court for summary judgment on two related issues: (1) that Great American breached its duty to defend Mr. Studyvin, and (2) that as a result of this breach of its duty to defend, Great American is estopped from denying coverage for Mr. Studyvin's liability under the default judgment. The court denies the Johnsons'

---

**2.** This is not to say that the court finds coverage as a matter of law for Mr. Studyvin's liability for the Johnsons' loss of use of their home inasmuch

as there are still factual issues concerning other exclusions in the policies which may apply.

motion for summary judgment because (1) there are issues of material fact concerning whether Great American breached its duty to defend Mr. Studyvin against the Johnsons' claims and (2) Great American is not estopped from denying coverage.

Great American denied Mr. Studyvin's request to be provided counsel to defend himself against the Johnsons' claims because Great American was unable to confirm that he had policies with it during the relevant periods. Now that Great American has acknowledged that Mr. Studyvin did have policies with it during and after the time that he applied the asbestos-containing ceiling texture, Great American denies that those policies covered Mr. Studyvin's liability to the Johnsons.

The Tenth Circuit has held the following concerning the duty to defend under Kansas law:

> [A]n insurer's duty to defend is broader than the duty to indemnify. Specifically, an insurer may incur a duty to defend its insured even though it ultimately may not have an obligation to indemnify any liability that may be found against the insured. So long as the insured can show a nonfrivolous possibility that the claim against it may fall within the coverage of the insurance contract, the insurer has a duty to defend the insured.

*American Motorists Ins. Co. v. General Host Corp.*, 946 F.2d 1489, 1490 (10th Cir.1991).

> In determining whether the insured has a duty to defend, it is by now well-recognized that we must examine the complaints in the underlying actions and decide whether there are any allegations that arguably or potentially bring the action within the protection purchased or a reasonable possibility that coverage exists.

*Id.* "The possibility of coverage may be remote, but if it exists the [insurance] company owes the insured a defense." *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 709–10, 732 P.2d 741 (1987).

In their complaint against Mr. Studyvin in the state court action, against which Great American elected not to provide a defense, the Johnson alleged the following:

In 1977, defendant Studyvin was hired by Stanley Armbruster, the owner and general contractor of a newly constructed residence located at 17670 W. 183rd St., Olathe, Kansas, to install the drywall and ceiling texture material in the new residence.

Defendant Studyvin selected and ordered the sheetrock, sheetrock tape, joint compound, and textured ceiling spray materials which he then installed in the Armbruster home. On or about September 19, 1977, defendant Studyvin completed the installation and finishing off of the drywall and ceiling spray in the Armbruster home, and presented defendant Armbruster with an invoice in the amount of $1,675, which included the cost of both labor and materials.

Laboratory tests of the ceiling material done at plaintiffs' request on July 10, 1990 revealed an unsafe level of Chrysotile, a form of asbestos.

In September, 1977, defendant Studyvin knew that the material which he installed in the ceilings of the home located at 17670 W. 183rd St., Olathe, Kansas, was asbestos containing.

In late 1977, or early 1988 [sic], defendant Studyvin knew, from representatives of OSHA, that the asbestos contained in ceiling spray material was potentially hazardous to health and was to be banned for use in textured ceiling spray material.

Plaintiffs' home is uninhabitable due to asbestos contamination, they have lost the use of all their worldly goods and personal effects.

As a further result of defendants' actions, each plaintiff has suffered substantial interference with the use and enjoyment of plaintiffs' home, expenses associated with the loss of use of their home, annoyance, inconvenience, severe emotional distress, lost peace of mind, and physical injury, including the need for present and future medical monitoring.

Finally, the complaint alleged that the Johnsons purchased their home from the Armbrusters on or about July 17, 1985.

Based on the analysis given above in the "Insurance Coverage" section, it would have been reasonable for Great American to conclude, given the allegation in the complaint that the Johnsons did not acquire their home until 1985, that none of Mr. Studyvin's policies covered the Johnsons' bodily injury and therefore there was no duty to defend on those claims.

There are material issues of fact concerning whether or not Great American knew of the policy which covered Mr. Studyvin during 1977 period before default judgment was entered against Mr. Studyvin and whether Mr. Studyvin satisfactorily gave Great American notice of the policy and policy numbers which he purported covered him during 1977. Kansas courts "look beyond the effect of the pleadings and ... consider any facts ... which [the insurer] could reasonably discover in determining whether it has a duty to defend." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403, 407 (1973). There are material issues of fact concerning whether Great American could have reasonably found Mr. Studyvin's policy numbers prior to the entry of default judgment against him. Therefore, the court denies the Johnsons' motion for summary judgment and finds that there are material issues of fact concerning whether Great American breached its duty to defend Mr. Studyvin against the Johnsons' claims for property damage arising from his application of asbestos-containing materials to the ceilings in the home in which the Johnsons now reside.

### VI. Estoppel to Deny Coverage ·

■ The Johnsons argue that, if given the opportunity, Kansas would adopt a rule of law that if an insurer breaches its duty to defend its insured from some claim, it is estopped from denying coverage for that claim.[3] The court disagrees. The Johnsons have not cited any authority that Kansas courts have adopted or are inclined to adopt such a rule. Such a rule is a minority position among the states. See R. Jerry, Under-

standing Insurance Law, § 111[6] at 581 (1987).

Kansas courts have addressed situations in which this rule could have been applied if the courts were so inclined but have not done so. In *Spruill Motors Inc. v. Universal Underwriters Ins. Co.* 212 Kan. 681, 512 P.2d 403 (1973), the insurer breached its duty to defend the insured but the Kansas Supreme Court dealt with the merits of the insurer's policy defenses anyway. A similar situation was present in *Snodgrass v. State Farm Mut. Auto. Ins.*, 15 Kan.App.2d 153, 804 P.2d 1012 (1991), in which a jury determined that State Farm had breached its duty to defend but on appeal, the appellate court considered State Farm's policy defenses concerning coverage. In either of these cases, had they chosen to do so, the court could have estopped the insurer from asserting its policy defenses after finding that it breached its duty to defend.

Many courts have declined to follow such a rule because it has the potential of creating coverage where none has been contracted for. R. Jerry, Understanding Insurance Law, *supra* at 582; *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1493 (5th Cir.1992) ("a finding of the insured's liability, to which the insurer who breached its duty to defend is now bound, is distinct from the question of coverage, which cannot be created ex nihilo by estoppel.") A Georgia reviewing court declined to adopt this rule, holding that even though the insurer is bound by a preceding action which determined the insured's liability and which the insurer wrongfully elected not to defend, it is not estopped from asserting policy defenses because "the liability under the policy and the liability for [the underlying tort] are indeed two separate transactions." *McCraney v. Fire Ins. Co. of Conn.*, 182 Ga.App. 895, 896, 357 S.E.2d 327 (1987).

Because Kansas courts have been presented with situations in which they could have estopped insurers who have breached their duties to defend from denying coverage and have not done so, this court will not find that

---

**3.** The Johnsons have cited cases from Connecticut, Illinois, Massachusetts, North Carolina, Rhode Island, Texas, and Wisconsin which hold

that insurers that wrongfully refuse to defend are estopped from raising policy defenses. However, they have not cited any Kansas authority.

Kansas courts would so hold. Although there may be arguably sound public policy grounds for doing so, that is a matter better left to the Kansas courts or legislature.

The Johnsons also argue that Great American is estopped from denying coverage under the policies because in its letter refusing to defend Mr. Studyvin from the Johnsons' suit, the only reason listed by Great American was an inability to confirm the existence of a policy. The court disagrees that the Johnsons are entitled to estoppel on this issue as a matter of law. "Where an insurer bases its refusal to pay a loss upon a forfeiture or failure to comply with particular condition it cannot thereafter maintain a defense based upon another condition not referred to in such refusal to pay and *of which it then had knowledge.*" *Pacific Indem. Co. v. Berge,* 205 Kan. 755, 767, 473 P.2d 48 (1970) (emphasis added). There are issues of material fact concerning whether Great American had knowledge of the terms of the policy which covered Mr. Studyvin in 1977 and whether it knew of defenses based on the policy.

Therefore, the court denies the Johnsons' motion for summary judgment on the issue of whether Great American is estopped to deny coverage.

*VII. The Johnsons' Motion to Strike*

■ The Johnsons move to strike the testimony of Great American's expert Ms. Elizabeth M. Drill Nay. The court agrees with the Johnsons' arguments in this matter and orders that Ms. Drill Nay's testimony be struck.

In their Expert Witness Disclosure, Great American stated that Ms. Drill Nay will render an opinion that the amount of the default judgment (approximately $1.3 million) rendered in the state court action is unreasonable and not the result of "an arms length transaction" conducted after "a good faith analysis of Studyvin's liability and potential exposure to the Johnsons." Such an opinion is irrelevant because, as is explained below, it constitutes an unauthorized collateral attack on a judicial decree which is binding on Great American.

The default judgment entered in February, 1992 in the district court of Johnson County, Kansas is binding on Great American as a privy of Mr. Studyvin. An insurer is in privity with its insured. *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 710, 732 P.2d 741 (1987). Great American is bound by the default judgment in the state court action because (1) the issue decided in the prior adjudication is identical to the one presented in the current action, namely Mr. Studyvin's liability to the Johnsons, (2) there was a final judgment on the merits, and (3) Great American, against whom the claim is asserted, is in privity with Mr. Studyvin, who was a party to the prior action. *See id.* at 710–11, 732 P.2d 741.

Great American argues that the expert testimony is necessary to establish that a settlement between the Johnsons and Mr. Studyvin was collusive and unreasonable and therefore Great American is not liable for it. *See Glenn v. Fleming,* 247 Kan. 296, 318, 799 P.2d 79, 92 (1990) ("We do express concern over the reasonableness of assignments/covenants in which the amount of the judgment assigned has been determined by agreement of the parties.") However, a default judgment is not a settlement and the amount of the judgment is not determined by agreement of the parties. This default judgment was entered after a hearing at which Mr. Studyvin did not appear, pursuant to K.S.A. § 60–255 (1983). In the process of entering a default judgment, normally the party against whom judgment is rendered does not participate at all and thus the judgment that is entered is not the product of negotiation and compromise. Also, the judgment entered contains a determination by the court, often after a hearing, rather than by the parties, of reasonable damages. K.S.A. § 60–255 (1983). For example, in the judgment in question, the court found that the measure of damages for destroyed personal property is not the replacement value, as requested by the plaintiffs, but is the fair market value at the time of loss and thus granted less in damages for property damage than was requested by the plaintiffs.

The Kansas statutes prescribe a method for setting aside a default judgment in K.S.A.

§ 60–260(b) (1983). Great American has not followed this procedure which requires that a motion to set aside a judgment be made within one year. That year has passed. Therefore, Great American cannot now pursue a different method to collaterally attack the default judgment. Accordingly, the court strikes Great American's expert witness, Elizabeth M. Drill Nay, from Great American's witness list.

*VII. Conclusion*

**IT IS THEREFORE ORDERED BY THE COURT** that Great American's motion for summary judgment is granted in part and denied in part (Doc. # 34).

**IT IS FURTHER ORDERED** that the Johnsons' motion for summary judgment is denied (Doc. # 45).

**IT IS FURTHER ORDERED** that Great American's motion for summary judgment is granted to the extent that the court finds that there was no coverage for Robert Studyvin's liability for the Johnsons' bodily injury or property damage, other than the Johnsons' loss of use of their home, which resulted from Robert Studyvin's contracting work in the home located at 17670 West 183rd Street, Olathe, Kansas in 1977 under the Special Liability Policies or the Business Protector Policies issued by Great American to Robert Studyvin.

**IT IS FURTHER ORDERED** that Great American's motion for summary judgment is denied to the extent that the court cannot find, as a matter of law, that there was no coverage for Robert Studyvin's liability for the Johnsons' loss of the use of their home which resulted from Robert Studyvin's contracting work in the home located at 17670 West 183rd Street, Olathe, Kansas in 1977 under the Special Liability Policies issued by Great American to Robert Studyvin.

**IT IS FURTHER ORDERED** that Great American's motion for summary judgment is granted to the extent that there was no coverage for Robert Studyvin's liability for the Johnsons' loss of use of their home which resulted from Robert Studyvin's contracting work in the home located at 17670 West 183rd Street, Olathe, Kansas in 1977 under the Business Protector Policies issued by Great American to Robert Studyvin.

**IT IS FURTHER ORDERED** that the Johnsons' motion for summary judgment is denied in that the court finds that Great American did not breach its duty to defend Mr. Studyvin from the Johnsons' claims for personal injury.

**IT IS FURTHER ORDERED** that the Johnsons' motion for summary judgment is denied in that material issues of fact exist concerning whether Great American breached its duty to defend Mr. Studyvin from the Johnsons' claims for property damage.

**IT IS FURTHER ORDERED** that the Johnsons' motion for summary judgment is denied in that the court finds that the Kansas courts would not adopt a rule that an insurer who wrongfully breaches its duty to defend an insured is estopped from denying coverage of the insured.

**IT IS FURTHER ORDERED** that the Johnsons' motion to strike Great American's expert witness (Doc. # 44) is granted.

**IT IS SO ORDERED.**