Connolly, J.
On April 26, 2001, Certain Interested Underwriters at Lloyds London (“Lloyds”) brought this action in the Superior Court seeking a declaration pursuant to G.L.c. 231A, that it is not obligated to defend or indemnify its insureds, Boston Group Development and Edmund Shamsi, Trustee of the Pyramid Realty Trust (collectively, “the insureds”) in two negligence actions brought by (1) Marion S. and Gerald B. DiPietro, and (2) by Gulf Insurance Co. On November 28, 2001, the insureds moved for partial summary judgment against Lloyds and Lloyds filed a cross motion for summary judgment against the insureds. For the following reasons, Boston Group Development’s and Edmund Shamsi’s, Trustee of the Pyramid Realty Trust, partial motion for summary judgment is DENIED and Lloyds’ cross motion for summary judgment is ALLOWED.
BACKGROUND
I. Factual Background
The summary judgment record contains the following undisputed facts. The insureds purchased a comprehensive general liability policy (“the Policy”) from Lloyds, through its agent, Hastings-Tapley Insurance Agency, Inc., for all phases of a construction renovation project at 8 Wellington Street in Boston, Massachusetts. Initially, the Policy ran from March 1, 1995 to March 1, 1996. The parties renewed the Policy through March 1, 1997, but voluntarily cancelled on June 20, 1996.
II. Procedural Background
Two lawsuits were brought against the insureds in January 2000 and November 1999 respectively. DiPietro v. Boston Group Development, Inc., et al. (Boston Municipal Court, Civil Action No. 26665); Gulf Insurance Co. v. Boston Group Development. Inc. et al. (Suffolk Superior Court, Civ. No. 00-3837-F). In the first lawsuit, Marion S. and Gerald B. DiPietro brought a negligence action against the insureds. The DiPietro’s alleged that they had purchased a condominium unit from the insureds, and that due to the insureds’s negligence, their unit was not properly designed and/or constructed in that the gas hot water heater closet was not properly insulated. As a result of improper construction, the DiPietro’s claim that the *408 August 25, 1997 fire started in and was caused by the gas hot water heater of their unit. The second lawsuit was brought on behalf of additional unit owners by their insurance company, Gulf Insurance Co., as subrogee, alleging the additional unit owners had also been damaged by the August 25, 1997 fire and that the fire was caused by negligent design, construction or maintenance of the unit. Subsequently, the insureds demanded coverage from Lloyds. Lloyds, though initially agreeing to defend the insureds under a reservation of their rights, later refused to defend and indemnify the insureds.
On April 26, 2001, Lloyds commenced this declaratory judgment action pursuant to G.L.c. 231A, seeking a ruling that the Policy provided no coverage to the insureds for the two lawsuits. On November 28, 2001, the insureds filed a partial motion for summary judgment against Lloyds on the issue of the duty to defend, asserting that Lloyds is obligated to defend its insureds. On November 28, 2001, Lloyds filed a cross motion for summary judgment asserting that they have no duty to defend or indemnify the insureds.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). A party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact-and that he is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976). In deciding a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).
II. The Policy
Interpretation of policy language is a question of law for the court. See Jet Line Servc. Inc. v. American Employers Ins. Co., 404 Mass. 706, 710 n.5 (1989). “The question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must take the defense.” Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1983). When “the allegations lie expressly outside the policy coverage and its purpose,” however, summary judgment for the insurance company is proper. See Lusalon, Inc. v. Harford Acc. & Indem. Co., 400 Mass. 767, 773 (1987), quoting from Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983).
The relevant portions of the Policy state that the insurer
will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies.
This insurance applies to . . . “property damage” only if: (1) the . . . property damage is caused by an “occurrence” that takes place in the “coverage territory”; and (2) the . . . “property damage” occurs during the policy period.
“Occurrence” means an accident, including continuous or repeated exposure to substantially the same generad harmful conditions.
“Property damage” means:
a. Physical injury to tangible property, including - all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.
The issue before the court is whether the losses which form the underlying suits are within the scope of the Policy. Specifically, the court’s task is two-fold. First, the court must interpret the Policy’s provisions, and second, it must “match” the underlying claims to the Policy’s provisions. The Policy sets forth two distinct requirements. It requires that the “occurrence” causing the property damage take place in the “coverage territory,” and that the “property damage” itself occur during the coverage period. Therefore, the insureds are only entitled, to a defense if the property damage at issue in the underlying lawsuits occurred during the policy period of March 1, 1995 through June 20, 1996. Since all parties agree that the fire occurred on August 25, 1997, the insureds are only entitled to a defense if the alleged negligent design and construction of the hot water heater closet constitutes “property damage” under the Policy. By matching the claims in the underlying third-party complaints to the provisions in the Policy, this court concludes that the alleged negligent construction of the hot water heater closet does not constitute “property damage” within the meaning of the Policy and that the insureds are not entitled to a defense. For the purposes of this summary judgment motion, this court need not address whether the alleged construction negligence was an “occurrence” within the meaning of the Policy because it clearly does not constitute “property damage,” the second requirement of the Policy.
a. Interpretation of the Policy Provisions
“Generally, within the meaning of a comprehensive liability policy, it is the time of damage that is material; i.e., the occurrence takes place when the complaining party actually is injured.” Smartfoods, Inc. v. *409 Northbrook Property & Cas. Co., 35 Mass.App.Ct. 239, 245 (1993); Continental Cas. Co., supra, at 152 (holding that “[t]he time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged"); Frohberg v. Merrimack Mut. Fire Ins. Co., 34 Mass.App.Ct. 462, 464 (1993).
The insureds heavily rely on environmental contamination cases, such as Trustees of Tufts University v. Commercial Union Ins. Co., 415 Mass. 844 (1993), for the proposition that a defect or omission in construction is an “occurrence” causing “property damage,” both necessarily occurring while a policy was in effect but resulting in additional damage afterwards. The insureds reliance on Tufts and other environmental cases, however, is misplaced.
Tufts clearly limits its holding to environmental contamination cases and carefully distinguishes its own narrow holding to cases such as the case at bar. See Trustees of Tufts University, supra, at 848-51. In Tufts, a third party requested reimbursement for the cost of cleaning up contamination on the site caused by hazardous materials. Id. at 848. The Court defined the “occurrence” as the “ ‘injurious exposure’ to the hazardous material during the policy periods,” and the “property damage” as “the continued contamination of soil and groundwater on the site during the policy periods caused by the release of the hazardous material.” Id. In Tufts, the exposure to and the contamination of the hazardous materials occurred throughout the policy period. In the instant case, however, there was no property damage, such as from the exposure to the negligently insulated water heater closet, throughout or during the policy period. The only alleged properly damage occurred after the expiration of the Policy, solely from the August 25, 1997 fire.
Moreover, the Tufts Court was diligent in distinguishing their holding from non-environmental contamination case law. See. id. at 850-51. The Court acknowledged the difference “between a causative act and the injurious result of that act,” in the non-environmental context. The Court noted that Continental Casualty Co. v. Gilbane Bldg. Co., one of the leading authorities within the non-environmental context, “stands for the proposition that the event giving rise to coverage under an occurrence-based policy is the happening of the actual property damage, and not the causative act." (Emphasis added.) Id. at 851. Non-environmental contamination cases differ from contamination cases because in the latter, exposure to hazardous materials may occur during and throughout the coverage period. In environmental cases, the exposure throughout the coverage period is not merely a causative act, but rather a hazardous, injurious result, in and of itself. Therefore, Tufts and other environmental contamination cases do not apply to the case at bar. Rather, to constitute “property damage,” the Policy unambiguously requires that during the coverage period, the damage either be physical injury to tangible property or that there be a loss of use of the property. Thus, the insureds’ contention that the negligently constructed water heater closet constitutes “property damage” under the Policy is erroneous.
b. Matching the Underlying Claims to the Policy
The underlying complaints do not allege physical damage to any tangible property during the coverage period, nor do they allege any loss of use of property. Rather, the complainants seek only recovery for damages resulting from a fire which occurred subsequent to the cancellation of the Policy. In the first lawsuit, DiPietro v. Boston Group Development. Inc. et al. (Boston Municipal Court, Civil Action No. 26665), the plaintiffs allege that because of the defendant’s negligence in the construction of their water heater closet, “a fire was caused to start. . . causing fire damage to Plaintiffs condominium, Unit 1, and Plaintiffs incurred fire damage in the amount of $12,057.71 to said Condominium Unit.” The second lawsuit, Gulf Insurance Co. v. Boston Group Development. Inc. et al. (Suffolk Superior Court, Civ. No. 00-3837-F), alleges the same.[2] Neither of these complaints allege or seek damages for any physical injury or loss of use during the coverage period. The allegations of the complaints are not'reasonably susceptible of an interpretation that they state a claim covered by the Policy.
Because the underlying claims do not match the Policy’s coverage requirements of either physical injury to tangible property or loss of use of the property during the coverage period, they are not covered by the Policy’s provisions. There exists, therefore no duty to defend or indemnify.[3] Because “the allegations lie expressly outside the policy coverage and its purpose,” summary judgment for the insurance company is proper. See Lusalon, Inc., supra at 773. Because the policy does not include coverage of the insureds’ claims and as such there is no duty to defend or indemnify, Boston Group Development’s and Edmund Shamsi’s, Trustee of the Pyramid Realty Trust, partial motion for summary judgment is DENIED and Lloyds’ cross motion for summary judgment is ALLOWED.
ORDER
For the foregoing reasons, it is hereby ORDERED that Boston Group Development’s and Edmund Shamsi’s, Trustee of the Pyramid Realty Trust, partial motion for summary judgment is DENIED and Lloyds’ cross motion for summary judgment is ALLOWED. It is further ORDERED that a Final Judgment shall issue containing a declaration that:
1. Lloyds is not obligated to defend or indemnify Boston Group Development and Edmund Shamsi, Trustee of the Pyramid Realty Trust, in the matter of *410 DiPietro v. Boston Group Development, Inc. et al. (Boston Municipal Court, Civil Action No. 26665).
2. Lloyds is not obligated to defend or indemnity Boston Group Development and Edmund Shamsi, Trustee of the Pyramid Realty Trust, in the matter of Gulf Insurance Co. v. Boston Group Development, Inc. et al. (Suffolk Superior Court, Civ. No. 00-3837-F).

 The complaint alleges that “|a]s a result of the negligence of the defendant ... a fire was caused to start causing fire damage to the condominium units and building on August 25th, 1997.”

 The court notes that defining the negligent construction as the “property damage" stands against notions of fairness and public policy. Such an interpretation would essentially deem comprehensive general liability insurance policies limitless. Further, with respect to the doctrine of “reasonable expectations,” this court does not agree that an insured within the construction industry reasonably expects coverage to extend to subsequent damage from negligent construction. Such a rule “would transform the policy to comprehensive litigation insurance.” See Smartfoods, supra, at 245.