No. 46,939

Eva C. Scott, *Appellee*, v. Earl Keever, d/b/a Gamble's, Ness City, Kansas: Falco Products Company, Philadelphia, Pennsylvania; Gamble-Skogmo, Inc., A Corporation, *Appellees*, and Liberty Mutual Insurance Company, *Appellant*.

(512 P. 2d 846)

Opinion filed July 14, 1973.

*Donald L. Newkirk*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *David W. Buxton*, of the same firm, was with him on the brief for the appellant.

*John L. Hampton*, of Hampton and Ward, of Great Bend, argued the cause, and *Tom Smythe*, of Ness City, was with him on the brief for appellee Eva C. Scott.

*Steven P. Flood*, of Flood, Martin, Coffelt & Flood, of Hays, was on the brief for appellee Earl Keever, d/b/a Gamble's, Ness City, Kansas.

*H. W. Fanning*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, was on the brief for appellee Gamble-Skogmo, Inc.

The opinion of the court was delivered by

Kaul, J.: This is a proceeding in garnishment initiated by plaintiff-appellee, a judgment creditor, on a judgment for the wrongful

death of her husband, which was rendered on October 7, 1970, in favor of plaintiff against all of the defendants-appellees. Plaintiff attempted to collect the judgment by initiating this garnishment proceeding against appellant Liberty Mutual Insurance Company (the garnishee defendant), who had until November 1, 1966, provided comprehensive general liability insurance to Falco Products Company.

Liberty Mutual answered in the garnishment proceedings denying any liability to any of the defendants. This answer was disputed by all defendants except Falco which did not appear in the action. The controversy was submitted on a written stipulation of facts to the trial court which found against Liberty Mutual. This appeal results.

The appeal is presented on an agreed statement of facts. R. E. Scott, husband of plaintiff Eva C. Scott, was injured on August 28, 1967, and died four days later. Mr. Scott's injuries resulted from a fall caused by the collapse of a defective ladder purchased from defendant-appellee Earl Keever, d/b/a Gamble's, Ness City, on April 16, 1966. Mr. Scott had maintained possession of the ladder until the accident. Defendant-appellee Earl Keever owns and operates the Gamble Store in Ness City, a franchised operation of defendant-appellee-Gamble-Skogmo, Inc. Keever purchased the ladder in question from Gamble-Skogmo, Inc., his supplier, in a quantity wholesale purchase for resale to franchise operations. Falco designed and manufactured the ladder for sale and distribution to the public prior to November 16, 1966. On October 20, 1966, Falco was adjudicated a bankrupt. Falco at all times material herein, prior to November 1, 1966, was insured by Liberty Mutual under the policy in question. The policy is denominated a "Comprehensive General Liability Policy" and was issued for a term commencing November 1, 1965, and expiring November 1, 1966.

The question in the case is whether the policy and attached endorsements afford coverage even though the accident for which Falco and the other defendants-appellees were adjudged liable did not occur until almost a year after the designated expiration date of the policy. The precise question is presented to this court for the first time. It is not disputed that if the accident, which happened on August 28, 1967, had occurred prior to November 1, 1966, it was such an occurrence as would have been covered by the policy,

and defendants-appellees would have been protected by the defense and indemnity provisions of the policy.

In holding for the defendants-appellees the trial court rested its decision generally on two premises: (1) that since the sale and warranty of fitness of the ladder took place prior to November 1, 1966, protection was afforded; and (2) that ambiguity exists in the provisions of the policy and attached endorsements, which must be construed against Liberty Mutual and, thus, the policy would afford protection to all insureds under the policy.

On appeal Liberty Mutual attacks the trial court's judgment on both grounds mentioned, taking the position that the policy and endorsements by the express, unambiguous provisions thereof exclude protection against accidents arising subsequent to the expiration date of the policy, regardless of the fact that the sale of the defective product occurred during the policy period.

As a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court. If the facts are admitted, as they are here, then it is for the court to decide whether they come within the terms of the policy, and the function of this court on appellate review is the same as that of the court below. (*Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 449 P. 2d 477; 1 Couch in Insurance 2d § 15:3, p. 638.)

The policy herein is structured in the customary form. It is divided into section entitled "Insuring Agreements," "Exclusions" and "Conditions." Attached to the policy are several endorsements, two of which are pertinent to the question involved and will be set out and discussed in the course of this opinion.

The first section of the body of the policy is entitled "Insuring Agreements." This section is divided into four separate divisions designated by Roman numerals. Sections I and II set out the insurance afforded by the policy and Section III defines insured. Section IV, which is pertinent to the controversy, is entitled "Policy Period, Territory" it reads in full as follows:

"This policy applies only to accidents which occur *during the policy period* within the United States of America, its territories or possessions, or Canada." (Emphasis supplied.)

By the express terms of agreement IV the policy covered only accidents which arose during the one year for which the policy was issued. No reasonable person could read this simple language any other way. As far as this provision goes that an accident may be definitely located as to time when and place where it happened,

it presents a single test to determine whether the liability under the policy arises within its specified period. To stretch the scope of "accident" backward in time to reach the date of the earliest initiation of any event which might be regarded as having a causal relation to the accident would introduce ambiguity where none now exists. Such would be the effect of adopting the position of defendants that the breach of warranty at the time of the sale of the ladder in question is the event which fixes coverage under the policy.

To support their position, as we understand it to be asserted, the defendants-appellees have tried to broaden the definition of an "accident" so as to relate back to the time when the wrongful act occurred which in the case of a claim for breach of warranty would be when the product was sold. Defendants-appellees say the provisions of Endorsements Serial Nos. 3 and 5, either broaden the scope of "accident," as we have mentioned, or create an ambiguity which must be construed against the insurer.

Endorsement Serial No. 3, entitled "Products Liability Endorsement—Vendors," reads in part as pertinent herein as follows:

"It is agreed that *such insurance as is afforded by the policy* also applies, subject to the following provisions, with respect to the possession, consumption, handling or use of, or the existence of any condition in any merchandise or product manufactured, sold, handled or distributed by the named insured:

"1. The insured applies to any person or organization with respect to the distribution or sale in the course of business of any merchandise or products manufactured, sold, handled or distributed by the named insured." (Emphasis supplied.)

Paragraph numbered two of Endorsement Serial No. 3 merely excludes from coverage those persons in the commercial chain who change the form of, repack, service or repair any such merchandise or products under the conditions therein set out; it is immaterial to the issue herein and need not be set out.

The manifest purpose of Endorsement No. 3 is to extend the coverage afforded by the policy to protect those involved in the commercial chain of the product, *i. e.*, persons or organizations involved in the sale, distribution or handling of products manufactured or sold by the principal insured. But the protection extended to those persons or organizations in the commercial chain is only "such insurance as is affored by the policy" and that is protection against liability for accidents occurring within the policy period. We are unable to detect any inconsistency or ambiguity between the provisions of Endorsement No. 3 and the provisions of the Insuring Agreements of the principal policy. The fact that the ladder was

purchased by Mr. Scott during the term of the policy and that a cause of action for breach of warranty against Falco and/or others in the commercial chain accrued at that time is irrelevant to the coverage afforded by the policy and attached endorsements. The accident which caused the injury and resulting damage for which recovery was awarded in this case did not occur during the policy period.

Ambiguity is not to be derived from or created by the fragmentation of an insurance contract. An ambiguity cannot be created by taking a certain provision of a policy or endorsement out of context and noting the absence of limiting language in the certain provision. Ambiguity arises from conflicting provisions not from the failure to inclde all the terms of a contract in each of its parts. The terms of an insurance contract, as in the case of any written contract, must be considered as a whole. (*Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 468 P. 2d 157; and *Saul v. Saint Paul-Mercury Indemity Co.*, 173 Kan. 679, 250 P. 2d 819.)

Defendants-appellees take the position, which was adopted by the trial court, that Endorsement Serial No. 5, entitled "Amendment of Bodily Injury Liability Coverage-Occurrence" affords coverage here and if not so interpreted then it conflicts with the insuring agreement of Section IV of the Insuring Agreements of the policy and the ambiguity must be construed in their favor. Defendants-appellees assert that the language employed in defining the term "occurrence" in Endorsement No. 5 extends coverage for an "accident" resulting in death regardless of when, in relation to the policy period, the accident occurred.

Endorsement Serial No. 5 reads as follows:

"It is agreed that with respect to *such insurance as is afforded by the policy,* or any endorsement forming a part thereof, for bodily injury liability, the word, 'occurrence' as defined herein is substituted for the word 'accident' wherever the latter appears.

" 'Occurrence' means an unexpected event or happening or a continuous or repeated exposure to conditions which results during the policy period in bodily injury, sickness or disease, including death at any time resulting therefrom, provided the insured did not intend that injury, sickness, disease or death would result. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." (Emphais supplied.)

With respect to protection against liability for bodily injury the word "occurrence" is substituted for the word "accident" and "occurrence" is defined in Endorsement No. 5 so as to extend

such insurance as is afforded to the named insured by the policy Insuring Agreements, which were broadened to include those persons in the commercial chain by Endorsement No. 3, to include damages for death at any time which resulted from an unexpected event or happening occurring during the policy period. It also extends coverage for bodily injury, sickness or disease which results during the policy period from an unexpected event or happening that may be continuous in nature and to injury, sickness or disease which resulted, during the policy period, from repeated exposure to conditions which precipitated the bodily injury or disease. In other words, the happening of an unexpected event is not required to be instantaneous or complete, but may be continuous in nature and if injury appears during the policy period resulting from repeated exposure to conditions, protection for resulting damages is afforded. In either case resulting damages are to be considered as arising out of one occurrence, and if the occurrence happened or bodily injury resulting from exposure appears during the policy period coverage is afforded. The net effect is that if an injury or disease occurs within the policy period and subsequent thereto death occurs or bodily injury or sickness continues any insured is afforded protection against liability for damages resulting therefrom.

We see no inconsistency or ambiguity within the language of Endorsement No. 5, nor does ambiguity appear in relating the provisions thereof to the Insuring Agreements of the policy. As in the case of Endorsement No. 3 it is expressly tied to the Insuring Agreements of the policy by the employment of the phrase "such insurance as is afforded by the policy." In Endorsement No. 5 the words "or any endorsement" are added which merely extends the coverage of the endorsement to those persons afforded coverage by Endorsement No. 3. Moreover, in the definition of "occurrence" appearing in Endorsement No. 5 the words "during this policy period" are repeated. Any reasonable person reading the endorsements must of necessity become immediately in contact with the phrase "such insurance as if afforded by the policy" which appears in clearly expressed language in the first sentence of each of the two endorsements in question. It should be noted that in Endorsement No. 5 it is the time of happening or event which results in bodily injury or death which is tied to the policy period and not the time of the sale of the product. In the case of *Isaac v. Reliance Insurance Co.*, 201 Kan. 288, 440 P. 2d 600, the use of the word "occur-

rence" in connection with the liability covered in a policy of liability insurance was said to mean an event or happening and not to refer to a condition.

Concededly, a Comprehensive General Liability Policy extending broad coverage, such as that in the instant case, is not a simple instrument. However, we believe the contract here clearly sets out the coverage afforded and it must be considered as fully expressing the intention of the parties. Although, as we have said many times, ambiguities in the wording of insurance contracts are to be construed in favor of the insured, this rule has no application whatsoever to language that is clear in its meaning. (*Simpson v. KFB Insurance Co., Inc.*, 209 Kan. 620, 498 P. 2d 71; *Kansas Farm Bureau Ins. Co. v. Cool*, 205 Kan. 567, 471 P. 2d 352; *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 370 P. 2d 396; and *Ferguson v. Phoenix Assurance Co.*, 189 Kan. 459, 370 P. 2d 379.) We believe the words used here, given their natural and ordinary meaning, clearly import a contract providing protection against liability for personal injury or death resulting from an unexpected event or happening within the policy period. Where an insurance contract is not ambiguous a court's function is to enforce the contract made, not to make another contract for the parties. (*Simpson v. KFB Insurance Co., Inc.*, supra.; *Kansas Farm Bureau Ins. Co. v. Cool*, supra; and *Watkins v. Metropolitan Life Ins. Co.*, 156 Kan. 27, 131 P. 2d 722.

As noted heretofore, the precise question appears before this court for the first time; however, questions concerning an injury arising outside the policy period with respect to products liability coverage such as that before us here are not strangers to the law of other jurisdictions. In some cases the coverage which defendants-appellees seek to impose is afforded by the terms of the policy and endorsements in question or is implied from construction in the case of ambiguity, but in policies identical or similar to that at bar the settled rule is that the time when damage is suffered controls not when the wrongful act, which in the case of warranty claims is when the product was sold, occurs. In this connection the author of an annotation entitled "Liability Insurance-Time Of Incident" appearing in 57 A. L. R. 2d § 4 (*b*), p. 1385, makes this statement:

"It appears to be well settled that the time of the occurrance of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. . . ." (p. 1389.)

In the case of *Landerman v. United States Fidelity & Guaranty Co.*, 25 Conn. Sup. 297, 203 A. 2d 150, as in the case at bar, a defective ladder was manufactured and sold during the period of the policy involved. The ladder broke resulting in an injury after the expiration of the policy. In the *Landerman* policy the language employed to define coverage during the period of the policy appears to be identical with that used in the instant policy. The Connecticut court held that since the policy provided that it applied only to an accident occurring during the policy period it did not cover insured for a defense and possible ultimate liability arising from an allegedly defective product which was sold during the policy period but was claimed to have caused the accident to buyer subsequent to the expiration of the policy.

In the *Landerman* case the court further pointed out that the coverage which was sought to be imposed might be more desirable and could be provided for. In this connection the court stated:

" '. . . It might be more desirable for an insured to have protection which indemnifies him against all liability arising from causative forces which come into being while the policy is in force, regardless of when the event which initiates liability occurs, rather than insurance which protects him from liability which accrues only within the term of the policy. This purpose can easily be carried out by a proper wording of the policy; but the wording in the policy under consideration here does not permit such a construction. The injuries which gave rise to a claim for damages * * * were caused by an "accident" which occurred after the policy had been terminated. The policy does not apply to that claim.' " (p. 152.)

To the same effect in *Palardy v. Canadian Universal Insurance Company*, 360 F. 2d 1007 (United States Court of Appeals, 2nd Cir. [1966]), another defective ladder case, it was held that a products liability policy, which provided that it applied only to accidents which occurred during the policy period and that the end of the policy period was the time of surrender or the effective date and hour of the cancellation, only insured against liability for accidents occurring within the policy period and not against products produced within the policy period, which at any indefinite time in the future might cause accidents.

In *Protex-A-Kar Co. v. Hartford Acc. Etc. Co.*, 102 Cal. App. 2d 408, 227 P. 2d 509, the language of the policy and endorsements was essentially the same as that employed in the instant policy. As in the case at bar it was asserted that the time when damage occurred did not effect the coverage so long as the product was sold and out of the possession of the named insured during the

stated term of the policy. The assertion was rejected, the court holding that where policies of products liability insurance were issued to a manufacturer of antifreeze compound and each policy contained a provision limiting recovery to accidents occurring "during the policy period", the insurer could not be held liable for accidents occurring after the policy had been canceled by the insurer as authorized under the policy, even though accidents resulted from the use of the product which had been sold during the period in which the policies were effective.

To the same effect see *National Aviation Underwrit. v. Idaho Aviation Ctr.*, 93 Idaho 668, 471 P. 2d 55; *Century Mut. Ins. Co. v. Southern Arizona Aviation*, 8 Ariz. App. 384, 446 P. 2d 490; *Silver Eagle Co. v. Nat. Union Fire*, 246 Ore. 398, 423 P. 2d 944.

Defendants-appellees contend that Endorsement No. 3 affords coverage for liability resulting from a breach of warranty which in this case occurred at the time of sale during the policy period. They argue that under Kansas law on the date of sale of a defective product the purchaser is entitled to recover for breach of warranty (citing *Freeto Construction Co. v. American Hoist and Derrick Co.*, 203 Kan. 741, 457 P. 2d 1, and other Kansas cases holding to that effect). Defendants-appellees further argue that the purchaser may recover consequential damages which revert back to the date of sale and delivery of the defective product (citing *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P. 2d 986). The position asserted is correct with respect to the liability of the manufacturer or seller of a defective product, but as to the insurer, as we have already pointed out, protection against such liability is expressly limited to occurrences or accidents occurring within the policy period.

Defendants-appellees also assert that since the ladder was defective at the time of sale it was a condition to which Mr. Scott was exposed from the time of sale through the date of his fall and, thus, coverage for liability for resulting damages is afforded by Endorsement No. 5. The trouble with the position asserted here is that the exposure did not result in bodily injury during the policy period as specifically required by the express provisions of Endoresment No. 5.

As pointed out by the court in *Landerman*, the coverage sought to be imposed by defendants-appellees could have been provided by a contract of insurance to that effect. Such was accomplished in *Kelley v. Indemnity Ins. Co. of North America*, 252 N. Y. App.

Div. 58; 297 N. Y. S. 228, affirmed without opinion 276 N. Y. Rep. 606, 12 N. E. 2d 599, which involved a products liability policy affording coverage for liability for injuries suffered during the term of the policy. An endorsement was attached to the policy which expressly eliminated the insuring agreement of the policy and substituted coverage for liability arising from injuries suffered from a product "which has actually been sold to a purchaser during the term of this endorsement." Injury was suffered after cancellation of the policy but the product involved was sold during the term of the endorsement. The appellate court affirmed the decision of the lower court finding coverage stating in the opinion:

". . . Both the lower courts held that the germicide company was seeking protection from liability occurring from the sales of its products, whether such liability arose during the term of the policy or thereafter, and that that was the agreement which defendant-appellant entered into when it eliminated the general insuring provisions in the policy and substituted therefor the provisions contained in the endorsement attached to the policy. . . ." (276 N. Y. Rep. p. 607.)

In the case at bar, by the use of the phrase "such insurance as is afforded by the policy," the endorsements were expressly tied to and limited by the insuring agreement of the policy rather than eliminating it as in the *Kelley* case.

In the later New York case of *Troy v. London & Lancashire Indemnity Co.*, 129 N. Y. S. 2d 84, plaintiffs incurred liability for accidents which occurred after termination of the policy but which were the result of sales made during the policy period. In the opinion the court stated:

"Paragraph V of the policy explicitly limits application of the policy to accidents which occur during the policy period. The court must accord to this clause its ordinary and usual meaning and may not extend it to include accidents which occurred after the policy was cancelled. . . ." (p. 85.)

In the *Troy* opinion the case was distinguished from the *Kelley* case in this fashion:

". . . [I]n that the general insuring provisions of the policy there under consideration were eliminated and an endorsement substituted which obligated the company for liability sustained by the insured as a result of sale made during the term of the endorsement. Through the medium of the foregoing endorsement plaintiff obtained protection not alone for injuries which occurred during the policy period but which might occur at any time. No such situation exists here. The policy specifically provided that it applied only to accidents during the policy period. . . ." (p. 85.)

The point demonstrated by the distinction between the *Kelley* and *Troy* cases is made clear by a statement summarizing the gen-

eral rule which appears in 11 Couch on Insurance 2d, [Risks Covered-Miscellaneous], § 44:385:

"Product-caused loss not occurring during the term of a products liability policy has been held to be nonetheless within the coverage of the policy where the product in question was sold during the policy term, and, under the language of the policy, coverage was tied to the time of the sale of the product, and not to the time of the loss. But a contrary conclusion has been reached where the products liability policy in question expressly limited its coverage to accidents occurring during the policy period." (p. 762.)

As previously noted, a policy extending broad coverage such as that before us is necessarily complex. However, we believe the policy provisions and the portions of the endorsements, which bear upon the issue, concisely and clearly express the coverage extended and the limitations thereon. We are convinced that an ordinary intelligent person, standing in the shoes of the insured, after a careful reading, would understand that the policy and endorsements afford protection only against liability for injuries resulting during the policy period from an accident or from exposure to conditions which caused the injuries.

The judgment of the trial court is reversed with directions that the judgment be entered for the appellant.