# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2564

_____

Transcontinental Insurance Company,   *
   *
          Plaintiff - Appellee,   *
   *
   *   Appeal from the United States
          v.   *   District Court for the Western
   *   District of Missouri.
W.G. Samuels Company, Inc., a   *
Kansas Corporation,   *
   *
          Defendant - Appellant,   *
   *
Excelsior Springs School District,   *
District No. 40,   *
   *
          Defendant.   *

_____

Submitted: January 14, 2004
Filed: June 4, 2004

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

W.G. Samuels Company, Inc. ("Samuels") appeals from the district court's[1] grant of summary judgment in favor of Transcontinental Insurance Company ("TIC"). TIC filed this declaratory judgment action to determine whether it had a duty under an insurance policy to defend and indemnify Samuels in its underlying lawsuit with Excelsior Springs School District, District No. 40 ("ESSD"). Because we conclude that the alleged property damage did not occur during the relevant policy period, we affirm.

I.

Samuels, a company in the business of supplying and installing carpet and other floor coverings, purchased a commercial general liability ("CGL") insurance policy from TIC. The coverage period of the policy was from October 19, 1995, to October 19, 1996.

The underlying lawsuit between Samuels and ESSD arose out of Samuels's installation of carpeting at Excelsior Springs Middle School. On July 5, 1995, Samuels and ESSD entered into a contract providing that Samuels would install carpeting at the middle school. Samuels began the installation project on April 11, 1996, and finished it on June 1, 1996.

Several years later, on December 18, 2000, the school district discovered that the carpet had become unattached to the floor in several highly trafficked areas throughout the school. The school district filed a lawsuit in state court against Samuels, alleging faulty installation of the carpet. Specifically, the complaint alleged that Samuels failed properly to clean the surface prior to installing the carpet, failed to install the carpet pursuant to product recommendations and manufacturer's

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

instructions, and failed properly to apply the carpet adhesive. The school district sought damages to repair and replace the carpet based on theories of breach of contract, breach of express warranty, breach of implied warranties, and negligence. The negligence count also claimed that the school district was entitled to damages arising out of the diminution of value to the school.

In this action between TIC and Samuels, TIC filed a motion for summary judgment, seeking a declaration that it had no duty to defend or indemnify Samuels in its lawsuit with ESSD. The district court found that the school district's complaint stated claims for "property damage" caused by an "occurrence" within the meaning of the insurance policy. The district court granted the motion for summary judgment, however, based on its conclusion that the alleged property damage did not occur during the coverage period from October 19, 1995, to October 19, 1996. Alternatively, the district court held that coverage was unavailable as a result of Exclusion (m) of the policy, commonly referred to as the "business risk" exclusion. On both of these grounds, the district court held that TIC was not required to defend or indemnify Samuels in its underlying lawsuit with the school district.

## II.

Summary judgment is appropriate when there is no genuine issue of material fact for trial. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review *de novo* the district court's interpretation of provisions in an insurance contract, as well as its ultimate decision to grant summary judgment. *Norwalk Ready Mixed Concrete, Inc. v. Travelers Ins. Cos.*, 246 F.3d 1132, 1135-36 (8th Cir. 2001).

The parties do not dispute the district court's conclusion that Kansas law governs this diversity action. Under Kansas law, insurance policies should be construed to give effect to the intention of the parties, and courts will apply the plain,

ordinary, and popular meaning of unambiguous language in a policy. *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 71 P.3d 1097, 1120 (Kan. 2003); *O'Bryan v. Columbia Ins. Group*, 56 P.3d 789, 792 (Kan. 2002). Where there is ambiguity in policy language, Kansas law applies the rule that "the construction most favorable to the insured must prevail." *O'Bryan*, 56 P.3d at 792.

The language of the policy in this case is clear. To trigger TIC's duty to defend or indemnify under the policy in this case, Samuels must establish that the lawsuit by ESSD involves (1) alleged "property damage" that (2) resulted from an "occurrence" that (3) happened within the applicable "policy period." In addition, the coverage sought must not be within the scope of the several exclusions that were negotiated as part of the policy.

The insurance policy defines "property damage" to include "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured." Samuels argued in the district court that the carpet itself is "tangible property" that was physically injured when it peeled away from the adhesive and concrete slab beneath it. The district court apparently agreed, noting that "the carpet installed by Samuels became damaged," and concluding that ESSD suffered property damage by "having to replace the carpet." The district court also found property damage in "the subsequent loss of use of the building while the carpet was being replaced."

An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Citing the decision of a sister court in Kansas, the district court predicted that the Kansas Supreme Court would find that "damage that occurs as a result of faulty or negligent workmanship constitutes an 'occurrence' as long as the insured did not *intend for the damage to occur*." *Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 189 F. Supp. 2d 1212, 1218 (D. Kan. 2002) (emphasis added). Because there was no evidence that

-4-

Samuels intended for the carpet adhesive to fail, the district court concluded that the carpet damage constituted an "occurrence" within the meaning of the policy and Kansas law.

TIC argues on appeal that the district court erred in concluding that the school district's allegations constituted "property damage" that resulted from an "occurrence." Samuels asserts that we have no jurisdiction to consider these contentions, because TIC did not file a cross-appeal challenging those portions of the district court's ruling that favored Samuels. We reject Samuels's jurisdictional argument. We may affirm a judgment on any ground raised in the district court, and the party that prevailed in the district court need not file a cross-appeal to raise alternative grounds for affirmance. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1238 (8th Cir. 1990). Nonetheless, for purposes of this appeal, we will assume *arguendo* that the district court was correct on these initial points, because we conclude that if the school district's allegations do implicate property damage caused by an occurrence, then the property damage did not occur during the relevant policy period.

The Kansas Supreme Court has adopted an injury-in-fact rule for purposes of determining when coverage is triggered under a CGL policy. *Scott v. Keever*, 512 P.2d 346 (Kan. 1973). Under this rule, insurance coverage is triggered on the date when an actual injury and damage occurs, *id.* at 351-52, even if the injury has not yet been discovered or become manifest. *See Cessna Aircraft Co. v. Hartford Accident & Indem. Co.*, 900 F. Supp. 1489, 1503 (D. Kan. 1995) (Kansas law); *cf. Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 764 (2d Cir. 1984); *Aetna Cas. & Sur. Co. v. Abbott Lab., Inc.*, 636 F. Supp. 546, 548-50 (D. Conn. 1986).

In light of these general propositions, the crucial dispute in this case concerns when the injury occurred. The policy provides that the "insurance applies to . . . 'property damage' only if . . . [the] 'property damage' occurs during the policy period." Relying on the fact that ESSD's complaint alleges negligence, breach of contract, and

breach of warranties at the time the carpet was installed in April 1996, Samuels argues that actual injury and property damage occurred at that time. TIC contends that no actual injury occurred until December 2000 when the carpet became unattached from the floor throughout the school.

We agree with the district court that TIC has the better of the argument. The leading decision of the Kansas Supreme Court in *Scott v. Keever* is instructive. *Scott* involved an injury caused when a plaintiff fell from a defective ladder. 512 P.2d at 348. The applicable insurance policy provided coverage for "accidents which occur during the policy period." *Id.* at 349. The case thus turned on whether the plaintiff's "accident" occurred on the date when he purchased the defective ladder (which was destined to cause injury) or on the date when he fell from the defective ladder. The Kansas Supreme Court held that the "accident" occurred on the date of the fall. *Id.* at 354.

In reaching that conclusion, the Kansas court clearly distinguished between the date when a cause of action accrued for breach of warranty against the seller of the ladder, and the date when injury occurred for purposes of triggering insurance coverage under the CGL policy: "The fact that the ladder was purchased by Mr. Scott during the term of the policy and that a cause of action for breach of warranty against Falco and/or others in the commercial chain accrued at that time *is irrelevant to the coverage afforded by the policy* and attached endorsements." *Id.* at 350 (emphasis added). Applying the analysis of *Scott*, we reject Samuels's analogous contention that the date when the school district accrued causes of action against Samuels is the relevant date for purposes of identifying an "occurrence" of "property damage" within the meaning of the insurance policy.

That is not to say that the date of a company's breach of contract or warranty, or its negligent workmanship, could *never* be the date when actual injury occurs for purposes of the insurance policy. If physical injury to tangible property occurred at

moment of the faulty workmanship, as in *Baugh Const. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1170 (9th Cir. 1988), such that the insured's work product and other tangible property affected by the work product were "doomed" and useless immediately, then the property damage and the negligence or breach of contract and warranty may be simultaneous.

In this case, however, the undisputed facts show that the alleged property damage did not occur until December 2000, more than four years after the end of the policy period. The carpet adhered to the floor when it was installed in 1996, and the school used it for several years before it peeled away from the floor. Samuels endorses the district court's conclusion that the alleged "property damage" was the carpet's separation from the floor and the temporary loss of use of the school building. These injuries did not occur at the time the carpet was installed. Indeed, intervening events were necessary before actual injury occurred. Samuels's own expert opined that the carpet detached only in "higher traffic" areas, where heavy abrasion from foot traffic and repeated cleaning caused failure of the adhesion. If the school had experienced less traffic or reduced cleaning, then the carpet may never have detached, thus averting property damage altogether.

This is not a case, therefore, where property damage occurred at the time of installation, but remained concealed from the property owner for a period of time. *Cf. Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 627-28 (2d Cir. 1993) (installation of asbestos created hazard and caused immediate property damage). Rather, the school district's lawsuit fits squarely among those cases involving "a wrongful act that produces no harm for a period of time and then suddenly manifests itself in a burst of damage. *See*, *e.g.*, *Travelers Insurance Co. v. C.J. Gayfer's & Co.*, 366 So.2d 1199, 1202 (Fla. App. 1979) (faulty roof drainage system finally leaks); *Singsaas v. Diederich*, 238 N.W.2d 878, 880 (Minn. 1976) (collapse of negligently installed manlift); *Peerless Insurance Co. v. Clough*, 105 N.H. 76, 193 A.2d 444, 446

(1963) (fire in negligently built chimney)." *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325, 1328 (4th Cir. 1986).

That Samuels's alleged negligence and breaches of contract and warranty in 1996 may have started a chain of events that culminated in the property damage in 2000 is not sufficient to establish injury in 1996. *Scott* teaches that "[t]o stretch the scope of 'accident' backward in time to reach the date of the earliest initiation of any event which might be regarded as having a causal relation to the accident would introduce ambiguity where none now exists." 512 P.2d at 349. We likewise cannot stretch the plain language of the insurance policy in this case to find an "occurrence" or "property damage" in 1996.

We hold that because the property damage allegedly suffered by ESSD occurred outside the policy period, TIC is not required to defend and indemnify Samuels against ESSD's lawsuit. Having resolved the dispute on that ground, we need not address whether Exclusion (m) of the insurance policy applies under the circumstances of this case. The judgment of the district court is affirmed.

_____