# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2722

_____

| | | |
|---|---|---|
| EMCASCO Insurance Company, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota |
| Edith Diedrich, Wayne Diedrich, | * | |
| John Diedrich, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| R.S. and R.S. as Guardian *ad litem* for | * | |
| M.S., | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: May 13, 2004
Filed: January 19, 2005

_____

Before LOKEN, Chief Judge, SMITH, Circuit Judge, and DORR,[1] District Judge.

_____

DORR, District Judge.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, sitting by designation.

Appellants appeal from the decision of the district court[2] granting summary judgment in favor of EMCASCO and denying summary judgment for appellants on their cross-motions for summary judgment. For the reasons stated below, we affirm the district court.

## I. Background

### A. Factual Background

Edith and Wayne Diedrich ("the Diedrichs") live in South Dakota, and, at all times relevant, Edith operated a day care business out of her home. Plaintiff-Appellee EMCASCO Insurance Company ("EMCASCO") issued a homeowner's insurance policy to the Diedrichs ("Homeowner's Policy") that provided coverage for the period from November 19, 1999, to November 19, 2000. The Diedrichs' Homeowner's Policy included a Home Day Care Endorsement that provided coverage for the operation of a day care business out of the Diedrichs' home.

In 1997, Edith Diedrich began providing day care to a minor named M.S. Between March 2000 and August 2000, the Diedrichs' teenage son John was present at the day care. It is undisputed that John sexually molested M.S., who was four years old at the time, more than forty times in those months. John was prosecuted in the South Dakota juvenile court system for the offenses.

In February 2002, M.S.'s natural mother (R.S.) filed suit against Edith Diedrich in South Dakota state court on behalf of herself and as guardian *ad litem* for M.S. The suit charges Edith Diedrich with negligent supervision of her son John and seeks

---

[2] The Honorable Karen E. Schreier, United States District Judge for the Southern District of South Dakota.

compensatory and punitive damages.  In May 2002, EMCASCO brought a diversity action in federal district court, seeking a declaratory judgment that the Diedrichs' policy did not cover the acts alleged by R.S. in state court and that, therefore, EMCASCO had no duty to defend or indemnify Edith Diedrich or any other insured from the claims made by R.S.

On cross-motions for summary judgment, the district court, analyzing South Dakota law and the Homeowner's Policy and Home Day Care Endorsement at issue, determined that EMCASCO had no duty to defend or indemnify the Diedrichs.  The district court found that  the language of the policy was not ambiguous, the "intentional acts" exclusion in the Homeowner's Policy precludes coverage for bodily injury that was intended by one of the insureds, that John Diedrich was an "insured" for purposes of the policy as a whole, and that John's intentional acts of criminal sexual molestation were excluded from coverage under the policy.

*B. Relevant Policy Provisions*

The Homeowner's Policy lists Wayne and Edith Diedrich as insureds. It is undisputed that their minor son John also qualifies as an "insured" within the basic definition contained in the policy.  The section titled "Coverage E" of the policy provides coverage for an "insured's" personal liability.  This coverage entitles insureds to both the payment of damages and a defense to the claim by counsel.

The Section II — Exclusions section of the Homeowner's Policy states, in pertinent part as follows:

1.     Coverage E – Personal Liability ... do[es] not apply to "bodily injury" or "property damage":

a.     Which is expected or intended by one or more "insureds";[3]
...
k.     Arising out of sexual molestation, corporal punishment or physical or mental abuse....

J.A. at 164-65. Any injury or damage resulting from the home day care business conducted by Edith Diedrich would also have been excluded from coverage under the basic Homeowner's Policy. However, the Diedrichs had purchased a Home Day Care Coverage Endorsement, which provides in pertinent part as follows:

Coverage E – Personal Liability ... appl[ies] to "bodily injury" and "property damage" arising out of home day care services regularly provided by an "insured" and for which an "insured" receives monetary or other compensation. Section II Exclusion 1.b. [of the original policy, excluding injury or damage arising out of a "business" engaged in by an "insured"] does not apply to the coverage provided under this endorsement.

However, the "bodily injury" and "property damage" coverage provided under this endorsement does not apply:

a.     To "bodily injury" or "property damage" arising out of the maintenance, use, loading or unloading, or entrustment by the "insured" to any person, of [animals, aircraft, motor vehicles or watercraft] owned ... by the "insured" or

b.     To "bodily injury" to any employee ....

---

[3]As amended by a rider entitled "Special Provisions – South Dakota." J.A. at 171, 174.

With respect to the coverage provided by this endorsement, Section II – Conditions Items 1. - Limit of Liability and 2. - Severability of insurance are deleted and replaced....

...

Severability of Insurance.

This insurance applies separately to each "insured" except with respect to the Limit of Liability. ...

...

All other provisions of this policy apply.

J.A. at 178. Appellants argue that the state court action is for negligent supervision by Edith Diedrich, not the intentional acts of her son, and that, therefore, the exclusions do not apply. Second, appellants claim that since the exclusions stated in the Home Day Care Endorsement's exclusions did not include the intentional acts and sexual molestation exclusions stated in the basic Homeowner's Policy, the exclusions of the basic policy were superceded and are no longer in effect. Third, appellants claim that, pursuant to the policy's severability clause, Edith Diedrich was the only insured under the Home Day Care Endorsement and, therefore, her son John was not an "insured," and his acts would not trigger any exclusions from the Day Care coverage. Finally, appellants claim that the policy language is ambiguous when construing the Homeowner's Policy in conjunction with the Home Day Care Endorsement. Such ambiguity, they argue, should therefore be construed in favor of the insured to include coverage.

EMCASCO argues that the policy and endorsement are not ambiguous, that they must be read together as a whole, that the severability clause simply means that the policy provisions apply separately to each insured, and that the exclusion from coverage for the intentional acts of one or more insureds precludes coverage in this case. EMCASCO also argues that coverage is precluded because of the sexual molestation exclusion and case law holding that sexual molestation is not an "occurrence," within a similar policy definition.

## II. Analysis

### A. Standard of Review and South Dakota Insurance Law

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review *de novo* the district court's interpretation of state law, its interpretation of insurance contracts, and its ultimate decision to grant summary judgment. *Transcon. Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 757 (8th Cir. 2004).

Neither party challenges the assertion that South Dakota law applies to this diversity action. Under South Dakota law, an insurance company's duty to defend its insured is "'much broader'" than its duty to pay a judgment against its insured. *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D. 1995) (quoting *Hawkeye-Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 490 (S.D. 1985)). The insurer must prove that it has no duty to defend its insured by proving that the claim "'*clearly* falls outside of policy coverage.'" *Wertz*, 540 N.W.2d at 638 (quoting *North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992) (emphasis in original) (further quotations and citations omitted). If there is ambiguity in the policy, a court should construe such ambiguities in favor of the insured and require the insurer to defend. *Lakes' Byron Store, Inc. v. Auto-Owners Ins. Co.*, 589 N.W.2d 608, 609 (S.D. 1999); *Wertz*, 540 N.W.2d at 638 (quoting *City of Fort Pierre v. United Fire & Cas. Co.*, 463 N.W.2d 845, 847 (S.D. 1990)) (further citations omitted)). However, a court should evaluate the plain language in the policy as a whole and not attempt to seek a strained or unusual meaning of the language. *Overfield v. Am. Underwriters Life Ins. Co.*, 614 N.W.2d 814, 817 (S.D. 2000) (quoting *Chord v. Reynolds*, 587 N.W.2d 729, 732 (S.D. 1999)) (further quotations and citations omitted).

*B. Policy Exclusions*

Neither party contests that the insurance policy would not cover (and EMCASCO would not be required to defend) suits against one of the insureds alleging intentional conduct by that insured, including claims of sexual molestation. However, appellants argue that because the insured Edith Diedrich was sued in negligence, and not vicariously for the intentional tort of her son, that the son's acts should be considered separate "occurrences" under the insurance policy. Because the negligence of Edith in supervising her son is independent from John's intentional acts, appellants argue, the "intentional acts" and "sexual molestation" exclusions on the policy do not apply. In other words, EMCASCO has a duty to defend the Diedrichs because the "occurrence" being alleged in the state court suit is the failure of the Diedrichs to supervise John, resulting in the "unexpected or unanticipated occurrence" of John's molestation. EMCASCO argues that the exclusion does apply.

In South Dakota, the insurer must prove that an exclusion applies. *Am. Family Mut. Ins. Co v. Purdy*, 483 N.W.2d 197, 199 (S.D. 1992) (citations omitted). Such exclusions must be explicitly set forth in the policy, with ambiguities being construed in favor of the insured. *Mid-Century Ins. Co. v. Lyon*, 562 N.W.2d 888, 891 n.4 (S.D. 1997) (citations omitted).

Section II Exclusions in the Homeowner's Policy denies coverage for bodily injury or property damage "[w]hich is expected or intended by *one or more* 'insureds.'" This provision is contained in a rider to the policy, which modified the original policy language. The original language denied coverage for bodily injury or property damage "[w]hich is expected or intended by *the* 'insured.'" J.A. 164 (emphasis added). The plain meaning of this modification clearly reflects a change from an exclusion that only applies to claims against the particular insured who

committed the intentional act to a broader exclusion that applies to all claims that arise out of an intentional act committed by any one or more of the insureds.

> Courts construing similar [intentional acts exclusionary] policy language have concluded that, when a provision uses the article "the," the [exclusion] applies only to claims brought against the particular insured named in the claim. Conversely, when the exclusionary language refers to intentional acts of "*an* insured," courts have uniformly concluded that the exclusion applies to all claims which arise from the intentional acts of any one insured, even though the claims are stated against another insured.

*N. Sec. Ins. Co. v. Perron*, 777 A.2d 151, 163 (Vt. 2001) (citing cases applying Alaska, California, Florida, Louisiana, Maine, New Hampshire, Tennessee, and Washington law) (footnote omitted); *accord Am. Family Mut. Ins. Co. v. Mission Med. Group*, 72 F.3d 645, 648 (8th Cir. 1995) (citing cases from California, Florida, and Michigan law "applying the exclusion to a co-insured who has not participated in the underlying intentional act").

Appellants cite, as contrary authority, *St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878 (8th Cir. 1998). In *Schrum*, the Zottas, parents of two minor children, sued the Shrums for negligent supervision after the Shrums' houseguest, Richard Lee Backes, sexually molested the Zotta children. *Id.* at 879. The Shrums' insurance company then sought a declaration that the Shrums' liability insurance did not cover the Zottas' claim on the basis of a sexual conduct exclusion. *Id.* at 879-80. A panel of this Court determined that the sexual conduct exclusion did not apply because the negligence cause of action contained "'separate and non-excluded'" claims from the molestation claim and Backes's actions were "merely incidental" to the negligence claim against the Zottas. *Id.* at 881 (quoting *Centermark Props., Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 103 (Mo. Ct. App. 1995)) (further citations omitted). *Schrum* is distinguishable in a number of ways. First, the Court in *Schrum*

was analyzing and interpreting two Missouri state court cases, which are generally inapplicable to this suit. Second, *Schrum*'s analysis was based on a sexual act exclusion, rather than an intentional act exclusion. Third, there was no discussion in *Schrum* as to whether Mr. Backes was an "insured" under the policy whose conduct would have itself come under a policy exclusion. For those reasons *Schrum* does not apply.

The injury that gives rise to the state court lawsuit—the sexual molestation of M.S.—was intended by John Diedrich and clearly constitutes an intentional act within the policy exclusion. Under the plain language of the Homeowner's Policy, John Diedrich was an "insured." Thus, on its face, we find, as the district court found, that the intentional act exclusion in the Homeowner's Policy is applicable to their claim. Because the intentional act exclusion applies, we need not consider whether the sexual act exclusion applies.

### *C. The Home Day Care Endorsement's Exclusions*

Appellants argue, however, that the intentional act exclusion contained in the basic Homeowner's Policy was superceded by the Home Day Care Endorsement to the Policy and, therefore, is no longer applicable. This argument is based on the theory that since the Endorsement, which authorized the day care coverage, contained its own stated exclusions and did not restate the exclusions in the basic Homeowner's Policy, the Homeowner's Policy exclusions were, therefore, superceded and are no longer applicable to coverage under the Home Day Care Endorsement.

This argument by appellants is contrary to the policy language and well-established South Dakota law.

> Endorsements or riders on a policy become a part of the policy, and must be construed with it. Such provisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy, or unless the provisions in the policy proper and in the rider or endorsement are conflicting.

*Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.*, 478 N.W.2d 824, 827 (S.D. 1991) (quoting 13A J. Appleman, *Insurance Law and Practice* § 7538 (1976)).

Section II of the Home Day Care Endorsement reflects that there was no intent to supercede all of the exclusions in the Homeowner's Policy by specifically stating that "Section II Exclusion 1.b. does not apply to the coverage provided under this Endorsement." The clear inference from this provision that singled out only one of the several exclusions in the basic Homeowner's Policy is that the remaining exclusions *do* apply. Any doubt about this inference is resolved by the final sentence of Section II in the Endorsement, which states: "All other provisions of this policy apply." Therefore we find, as did the district court, that the exclusions listed in the Home Day Care Endorsement are in addition to and supplement the exclusions listed in the basic Homeowner's Policy.

### D. Severability Clause

Appellants' next argument is that the "Severability of Insurance" provision in the Endorsement requires that each insured's acts be viewed separately and, therefore, John's intentional acts should not be taken into account when considering a claim for Edith's negligence. In addition, appellants argue that Edith is the only insured under the Home Day Care Endorsement because she was the only insured operating the home day care business.

Again, the established law and a plain reading of the Endorsement language do not support appellants' contentions. The pertinent provision in the Endorsement provides as follows:

> For an additional premium, we cover the home day care "business" described below, conducted by an "insured."
> ...
> 2. Severability of Insurance. This insurance applies separately to each "insured" except with respect to the limit of liability. All other provisions of this policy apply.

J.A. at 178. The South Dakota Supreme Court has previously considered a similar argument for interpretation of a severability clause to preclude the act of one insured from being used to support the application of an exclusion against another insured. In *Great Cent. Ins. Co. v. Roemmich*, 291 N.W.2d 772 (S.D. 1980), the court considered an exclusion in a homeowner's policy for liability arising out of the use of a vehicle by "any insured." *Id.* at 773-74. As in the instant case, the underlying event was against the parents for negligent supervision of their son. The insured in *Roemmich* claimed that the severability clause should have been interpreted to limit the vehicle exclusion only to the particular insured who was driving the vehicle. The South Dakota Supreme Court stated

> the definition of "insured" is readily understandable and the severability clause does not create any ambiguity. The use of the words "any insured" makes it clear that the policy does not cover liability arising from motor vehicle use by any insured. The policy language is clear and unambiguous.

*Id.* at 774. In the same way, the definition of an "insured" and the intentional acts exclusion in the Diedrichs' Homeowner's Policy are unambiguous. The severability clause does not create any ambiguity. Thus, we hold that the severability clause does

-11-

not separate Edith's claimed negligence from the exclusion for John's intentional acts.

We are likewise not persuaded by appellant's contention that Edith is the only insured under the Day Care Endorsement. It is undisputed that Edith and Wayne Diedrich and their son John are "insureds" as defined in the Homeowner's Policy. Nowhere is the definition of "insured" redefined in the Home Day Care Endorsement to exclude "insureds" as defined in the body of the Homeowner's Policy. In general, when a term used in the body of the policy is not redefined in an endorsement, it retains the definition set forth in the body of the policy. 4 Eric Mills Holmes, *Appleman on Insurance* § 20.1 (2d ed. Supp. 2004). The policy language supports this conclusion. In the provision that excludes home day care coverage from the Diedrichs' general Homeowner's Policy, it provides "[i]f *an* 'insured' regularly provides home day care services," the policy does not provide liability coverage. J.A. at 177 (emphasis added). Similarly, the Home Day Care Endorsement states that "we cover the home day care 'business' described below conducted by *an* 'insured' ...." J.A. at 178 (emphasis added). As discussed above, the use of the article "an" clearly indicates inclusion of all those defined as "insured," not just the particular "insured" person conducting the business.

## E. Ambiguity

Appellants have made a general argument that the pertinent policy provisions are ambiguous. "When the Homeowner's Policy and Home Day Care Endorsement are placed side-by-side and analyzed together, they simply cannot be reconciled." *Appellant's Br.* at 35. In essence, appellants repeat their argument that because the Home Day Care Endorsement listed separate exclusions, an ambiguity was created between the Home Day Care Endorsement exclusions and the Homeowners Policy exclusions. We find no merit in this argument for the reasons discussed above.

## III. Conclusion

In summary, we find that the language in the intentional acts exclusion of the policy is unambiguous and excludes claims based on the underlying intentional conduct of any one of the "insureds." The policy unambiguously defines John Diedrich as an "insured." M.S. and R.S.'s claim filed in state court directly spawns from John's intentional acts of sexual molestation. None of the provisions in the Home Day Care Endorsement changes this analysis. Therefore, the plain language of the policy relieves EMCASCO from the duty to defend Edith Diedrich in the state court action and from any obligation to indemnify the Diedrichs as a result of that claim. Accordingly, we affirm the well-reasoned opinion of the district court.

_____